IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IAN BRADLEY CORBIN,<br>　　　　Petitioner | :<br>:<br>: |
| 　　vs. | :　CIVIL NO. 1:CV-13-2276 |
| | : |
| VINCENT D. MOONEY, *et al.*,<br>　　　　Respondents | :　(Judge Caldwell)<br>:<br>:<br>: |

*M E M O R A N D U M*

I.　*Introduction and Procedural History*

　　　　Ian Bradley Corbin has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In June 2008, a jury in the Court of Common Pleas of Luzerne County, Pennsylvania, convicted Petitioner of aggravated assault, 18 Pa. Cons. Stat. Ann. § 2702(a)(1), for shooting the victim and of carrying a firearm without a license. 18 Pa. Cons. Stat. Ann. § 6106(a)(2).  In July 2008, Petitioner was sentenced to a minimum of five years (the statutory minimum) and to a maximum of ten years' imprisonment on the assault charge and to twelve months' probation on the firearm charge, to run concurrently with the assault charge.  (Doc. 13-1, ECF p. 35).

　　　　Petitioner took a direct appeal, which was unsuccessful.  *Commonwealth v. Corbin*, No. 1543 MDA 2008 (Pa. Super.).  In July 2010, he filed a petition under the Pennsylvania Post Conviction Relief Act (PCRA).  42 Pa. Cons. Stat. Ann. § 9541-9546. After a hearing, the trial court denied relief in June 2011.  The Pennsylvania Superior

Court affirmed the trial court in December 2012. *Commonwealth v. Corbin*, No. 1314 MDA 2011 (Pa. Super.).

The 2254 petition was filed on August 30, 2013. It presents nine grounds for relief from the convictions. The petition was filed while Corbin was an inmate at the state correctional institution in Coal Township, Pennsylvania. He is now on parole, but there is no question of our jurisdiction to entertain the 2254 petition and of our responsibility to resolve it on the merits, even though Petitioner is no longer imprisoned. *See Leyva v. Williams*, 504 F.3d 357, 362-63 (3d Cir. 2007).

II.   *Federal Habeas Law*

Under 28 U.S.C. § 2254, a state prisoner can seek federal habeas relief from his conviction for violations of federal law. *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S.Ct. 859, 861, 178 L.Ed.2d 732 (2011). In pertinent part, as stated in 28 U.S.C. § 2254(a), the petitioner can seek relief "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

When a petitioner's federal claims have been adjudicated against him by the state courts, habeas review of the state courts' resolution of the claims is governed by 28 U.S.C. § 2254(d)(1) and (d)(2). Under subsection (d)(1), we may grant the writ if the state courts' adjudication of the claims was contrary to clearly established Supreme Court precedent or an unreasonable application of that precedent. "[A] state court ruling is considered an 'unreasonable application' if the state court unreasonably applies the correct legal rule to the particular facts, unreasonably extends a legal principle to a new

-2-

context, or unreasonably refuses to extend the principle to a new context where it should apply." *McMullen v. Tennis,* 562 F.3d 231, 236 (3d Cir. 2009) (cited cases omitted). "The unreasonable application test is an objective one - a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." *Jacobs v. Horn,* 395 F.3d 92, 100 (3d Cir. 2005)(cited cases omitted). If "'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief cannot be granted. *Harrington v. Richter,* 562 U.S. 86, 101, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011)(quoted case omitted). Under subsection (d)(2), we may grant the writ if the state courts' adjudication of the claims "resulted in a decision that was based on a unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Additionally, a federal court cannot grant habeas relief to a section 2254 petitioner unless the petitioner has exhausted the remedies "available" in state court on his federal claims. *See* 28 U.S.C. § 2254(b)(1)(A); *Slutzker v. Johnson,* 393 F.3d 373, 379 (3d Cir. 2004)(citing section 2254(b)(1)(A)). Exhaustion is accomplished "by fairly presenting each claim at each stage of the state's established appellate review process." *Villot v. Varner*, 373 F.3d 327, 337 (3d Cir. 2004). On a Pennsylvania conviction, a petitioner must present his claims as far as the Pennsylvania Superior Court because Pennsylvania Supreme Court Order 218 makes review in the state supreme court "unavailable for purposes of exhausting state court remedies . . . ." *Boyd v. Waymart,* 579 F.3d 330, 368 (3d Cir. 2009)(quoted case and internal quotation marks omitted).

III. *Discussion*

  A. *Ground One: a Claim of Ineffective Assistance of Trial Counsel in Failing to Move to Suppress an Admission Obtained in Violation of Petitioner's* Miranda *Rights*

Petitioner claims that his Sixth Amendment right to effective assistance of counsel at trial was violated when counsel failed to move to suppress a statement he made admitting he shot the victim. Petitioner argues the statement should have been suppressed as a violation of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

We provide some background on this claim. A little after 2:00 a.m. on April 7, 2007, the victim and two friends were in the parking lot leaving the Woodlands Inn in Wilkes-Barre, Pennsylvania, when, as found by the jury, Petitioner shot the victim in the upper right arm. Petitioner had also been in the Woodlands Inn that evening and had been told to leave after having gotten into a fight with another patron.

After the victim was shot, he and Petitioner scuffled for possession of the gun. Two security officers from the Woodlands Inn assisted in subduing Petitioner. They held Petitioner down until police officers from the Plains Township Police Department arrived. (Doc. 17, ECF p. 12). Petitioner was given his *Miranda* warnings by Officer Dale Binker and placed in the back of a patrol car. (Doc. 17, ECF p. 54; Doc. 13-1, ECF p. 57). Leonard Galli, a sergeant for the Exeter Borough Police Department, was working off duty as a security officer for the Woodlands Inn that night and was present when

Petitioner was detained. (Doc. 17, ECF p. 11). Galli testified that while Petitioner was in the patrol car, he kept wanting to talk. Galli asked him in regard to the incident what Petitioner was doing. Galli testified that Petitioner responded that: "I shot that guy; he was involved in that fight in the club, he was the guy who attacked me." (Doc. 17, ECF p. 12). Galli replied that he was wrong, that the victim had had nothing to do with the fight involving Petitioner. (*Id.*).[1]

The trial court rejected the *Miranda* claim for three reasons: (1) Galli was not acting under color of law at the time; (2) Petitioner spoke after receiving his *Miranda* warnings; and (3) Petitioner's admission was made gratuitously. (Doc. 13-1, ECF p. 75). On appeal, the Pennsylvania Superior Court adopted this reasoning. (*Id.*, ECF p. 282).

Given our standard of review, that the state courts' ruling must be contrary to clearly established Supreme Court precedent or an unreasonable application of that precedent, we cannot disturb this decision. It is dispositive of this claim that the state court's decided that Galli was not acting under color of state law at the time. There does not appear to be any Supreme Court precedent bearing on this issue. And at least one federal court would agree that *Miranda* does not apply to an off-duty police officer acting in roughly similar circumstances as a security guard on the ground that it would not be state action. *See United States v. Abney*, No. 03-CR-60, 2003 WL 22047842, at *3-5 (S.D.N.Y. Aug. 29, 2003)(*Miranda* does not apply when a police officer is acting at the

---

[1] Galli had been one of the security officers who had broken up that fight.

time as a private security guard and not as an agent or instrument of the government) (discussing cases).

> B. *Ground Two: a Claim of Ineffective Assistance of Trial Counsel in Not Objecting When the Prosecutor Presented Evidence Concerning the Victim's Personal Life, Professional Reputation, and Communal Ties*

Petitioner claims trial counsel was ineffective in not objecting to prosecutorial misconduct when the prosecutor presented evidence concerning the victim's personal life, professional reputation, and communal ties since this evidence was not relevant to the charge of aggravated assault.

In his opening, the prosecutor mentioned that the victim was a firefighter, that he was "the type of guy who runs into a burning building," that he had been in the military where he trained firefighters, and that Petitioner had almost taken his dream of being a firefighter away. (*Id.*, ECF p. 7). Upon questioning from the prosecutor, the victim testified to his lifelong dream of being a firefighter and that at the time the victim was shot he was one week away from taking a final examination that would have qualified him as a firefighter in Washington, D.C. (Doc. 17, ECF pp. 14, 15). The victim also testified to the effect the wound had on his efforts to be a firefighter. After the shooting, he was placed on limited duty but was able with physical therapy to become a firefighter. (*Id.*, ECF p. 23). The victim also spoke of the long-term effects the shooting had on his life and his ability to do his job. (*Id.*, ECF p. 24). He still has pain and

numbness in his right hand, a sensitivity to cold, and shooting pains down the chest, back or arm. (*Id.*).

In his closing, the prosecutor again referred to the victim's dream, that he wanted to serve the community as a firefighter and that he would not allow his wounded right arm to get in the way. (*Id.*, ECF p. 72). In arguing the relative credibility of the witnesses,[2] the prosecutor also told the jury that they would have to disregard the testimony of two firefighters, "pillars of the community," to acquit Petitioner.[3] (*Id.*). He again mentioned the victim's job as a firefighter later in the closing and how he had fought to become one when others in his circumstances would have settled for a desk job. (*Id.*, ECF p. 4).

The trial court rejected this claim, ruling that the testimony was relevant to the Commonwealth's burden to show "serious bodily injury," an element of aggravated assault.[4] The testimony concerning firefighting supported an argument that the injury had caused a protracted loss of the use of the arm and the effect as well on his day-to-day existence. (Doc. 13-1, ECF p. 76). Applying the state-law test for ineffectiveness of

---

[2] Petitioner testified that he had driven to the Woodlands Inn that night in a friend's car, that he had found the firearm in the car after he had been escorted out for fighting and that he had it with him in the parking lot while he was looking for his friends, fearing for all of their safety. Petitioner testified that the victim attempted to take the gun away from him and that it went off accidentally while they struggled for it. (*Id.*, ECF p. 60).

[3] One of the friends the victim was with that night was also a firefighter.

[4] In relevant part, section 2702(a)(1) makes it unlawful to "attempt[ ] to cause serious bodily injury to another, or cause[ ] such injury . . . ." 18 Pa. Cons. Stat. Ann. § 2702(a)(1). "Serious bodily injury" is defined, in pertinent part, as "Bodily injury . . . which causes . . . protracted loss or impairment of the function of any bodily member or organ." *Id.* § 2301.

counsel, the trial court also decided that even if the testimony should not have been admitted, the outcome of the trial would not have been different. The superior court adopted this reasoning on appeal. (*Id.*, ECF p. 282).[5]

Given our standard of review, that the state courts' ruling must be contrary to clearly established Supreme Court precedent or an unreasonable application of that precedent, we cannot disturb this decision. More specifically, after a review of the trial transcript, we cannot say that the conclusion, essentially that there was no reasonable probability that the outcome of the trial would have been different, was contrary to, or an unreasonable application of, *Strickland*.

> C.  *Ground Three: a Claim of Ineffective Assistance of Trial Counsel in Not Objecting to the Prosecutor's Misrepresentation of Facts and Improper Conduct During Cross-examination of Petitioner and During Closing Argument*

Petitioner claims trial counsel was ineffective in not objecting to the prosecutor's misrepresentation of facts and improper conduct during cross-examination of Petitioner and during closing argument.

Petitioner does not specify the misrepresentation of facts or the improper conduct. Bald assertions and conclusory allegations are not sufficient for a 2254 petition. *See Campbell v. Burris*, 515 F.3d 172, 184 (3d Cir. 2008)("'bald assertions and

---

[5] The three-part test under state law for ineffectiveness, *see Commonwealth v. Spotz*, 582 Pa. 207, 220-21, 870 A.2d 822, 829-30 (2005), is the equivalent of the federal test under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Perez v. Rozum*, 488 F. App'x 656, 658 n.2 (3d Cir. 2012)(nonprecedential)(citing *Rompilla v. Horn*, 355 F.3d 233, 248 (3d Cir. 2004)), *rev'd on other grounds sub nom. Rompilla v. Beard,* 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005)).

conclusory allegations do not afford a sufficient ground for an evidentiary hearing'" in 2254 proceedings)(quoting *Mayberry v. Petsock,* 821 F.2d 179, 185 (3d Cir. 1987)).  We therefore reject this claim.

> D. *Ground Four: a Claim of Ineffective Assistance of Trial Counsel in Not Objecting to the Prosecutor's Misrepresentation of a Medical Stipulation Introduced at Trial Concerning the Victim's Injuries*

Petitioner claims trial counsel was ineffective in not objecting when the prosecutor allegedly misrepresented at trial a medical stipulation concerning the victim's injuries.  In pertinent part, the prosecutor read to the jury the following stipulation.  Dr. Falcone, the emergency room physician who treated the victim on the night he was shot, "would offer the following statements to a reasonable degree of medical certainty . . . ." (Doc. 17, ECF p. 52).  First, the victim "presented with a through and through .9 millimeter gunshot wound to the right shoulder and bruises and abrasions." (*Id.*). Second, the gunshot wound did not strike bone but it did strike muscle, cartilage, nerve endings." (*Id.*).  Third, a radiological consultation "found no significant abnormalities, no fracture and no dislocation." (*Id.*).  Fourth, a trauma consultation "found the right upper extremity was intact with no sensory or motor defects, full range of motion." (*Id.*).  Fifth, "[t]here is no evidence of any fractures.  Wound appears to be just a flesh wound." (*Id.*). Sixth, "impression was that of a 'superficial gunshot wound to the upper right extremity.'" (*Id.*).

-9-

Petitioner contends the stipulation was supposed to have been based on the victim's medical records from the night he was shot but do not accurately reflect those records. Specifically, he complains that there is nothing in the medical records to indicate that the victim suffered nerve damage. (Doc. 13-1, ECF p. 50; Doc. 13-1, ECF pp. 150-51). He also complains that the stipulation says that the right upper extremity was intact when the medical records (Doc. 17-1, ECF p. 115) actually say something more, that the right upper extremity was *neurologically* intact. (Doc. 13-1, ECF p. 50; Doc. 13-1, ECF pp. 150-51). Petitioner contends this misinformation improperly allowed the prosecutor to buttress the proof that the victim suffered a serous bodily injury. Indeed, in his closing, the prosecutor cited the stipulation's notation that the victim suffered nerve damage as support for the victim's testimony that the gunshot caused persistent sensory symptoms in his arm and hand. (Doc. 17, ECF p. 74).

At the PCRA hearing, one of Petitioner's trial counsel testified that he agreed to the stipulation, prepared from the medical records, and to present it to the jury for two reasons. First, it contained language favorable to Petitioner on the issue of serious bodily injury. For example, it said that the gunshot did not strike bone, that the wound was a flesh wound, and that it appeared to be superficial. Second, the stipulation eliminated the possibility of the doctor taking the stand. The doctor could have testified to "how gruesome" the wound was and could have gotten "into stuff that [could] really backfire on you." But with a stipulation to a flesh wound, that could be controlled. (Doc. 13-1, ECF p. 66). Petitioner's other counsel testified that they agreed to the stipulation to

-10-

prevent the jury from being "more inflamed by the injuries" the victim suffered.  (*Id.*, ECF p. 64).

The trial court rejected this claim, reasoning that the decision to use the stipulation was sound trial strategy as it avoided the doctor's testifying "to the nature and extent of the injury and the treatment [the victim] received," which "would have inflamed and influenced the jury far more than the stipulation . . . ." (Doc. 13-1, ECF p. 77).  The superior court adopted this reasoning.  (Doc. 13-1, ECF p. 282).

We also reject this claim.  Petitioner's argument is based on the idea that the stipulation was limited to the victim's medical records on the night he was shot.  To a great extent it was.  However, the stipulation plainly says that, if called at trial, the doctor would testify, at the very least, that the gunshot did strike nerve endings, something that would have been consistent with the victim's testimony as to his long-range limitations.  We therefore cannot disagree with the state courts' assessment that the decision to go with a stipulation was a reasonable trial strategy to keep the doctor off the stand.

E.  *Ground Five: the Trial Court Erred in Denying Petitioner's Claim that the Evidence Was Insufficient to Sustain the Conviction for Carrying a Firearm Without a License*

Petitioner claims the trial court erred in denying his claim that the evidence was insufficient to sustain the conviction for carrying a firearm without a license because the Commonwealth failed to present any evidence that he had concealed, or attempted to conceal, the firearm.  Respondents argue we cannot consider this claim because

Petitioner failed to exhaust it, not having raised it either on direct appeal or in his PCRA proceedings.

Petitioner asserts he presented this claim in his PCRA proceedings.  (Doc. 1, ECF p. 11).  He is mistaken.  He did present a claim of trial-counsel ineffectiveness in his PCRA proceedings, both to the trial court and the superior court.  As part of that claim, Petitioner questioned the sufficiency of the evidence on the firearms offense, (Doc. 17-1, ECF pp. 80-83; Doc. 13-1, ECF p. 156), but did not present a straightforward claim that the evidence was insufficient.

This claim has been procedurally defaulted because it should have been raised on direct appeal.  When "further state-court review is clearly foreclosed under state law, exhaustion is excused on the grounds of futility." *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir. 2001).  However, this does not mean that Petitioner is entitled to have his claim adjudicated on the merits.  The claim is deemed exhausted only because Petitioner committed a procedural default; he failed to present it to the superior court when he should have.  To prevent section 2254 petitioners from avoiding the exhaustion requirement by failing to present their claims in state court, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 1734, 144 L.Ed.2d 1 (1999), federal courts do not consider procedurally defaulted claims.  There are two exceptions to this rule.  The merits of procedurally defaulted claims will be considered if the petitioner shows either: (1) cause and prejudice; or (2) a fundamental miscarriage of justice.  *See Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000).  Neither exception applies here.

Counsel's ineffectiveness on direct appeal is cause to excuse a procedural default. *See Fischetti v. Johnson*, 384 F.3d 140, 154 (3d Cir. 2004); *United States v. Mannino*, 212 F.3d 835, 840 (3d Cir. 2000). The difficulty for Petitioner is that ineffective assistance of counsel in failing to raise a claim on direct appeal is itself a claim that must have been properly presented to the state courts and if it has not been, must also satisfy the cause-and-prejudice standard before the underlying claim can be considered on the merits. *See Edwards v. Carpenter*, 529 U.S. 446, 450-51, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000)(claim that direct-appeal counsel was ineffective in not making a claim that the evidence was insufficient to support the conviction could not serve as cause to excuse the default of the underlying claim when the ineffectiveness claim was itself procedurally defaulted); *Parmelee v. Piazza*, 622 F. Supp. 2d 212, 222 (M.D. Pa. 2008)(failure to raise ineffective assistance of direct-appeal counsel in the petitioner's PCRA petition meant that this ineffectiveness claim could not be cause to excuse the underlying claims)(citing *Edwards*); *Willis v. Brooks*, No. 07-CV-2302, 2007 WL 3429802, at *3 (E.D. Pa. Nov. 14, 2007)(ineffective assistance of direct-appeal counsel cannot be cause to excuse the default of the underlying claim of mental incompetence unless the ineffectiveness claim was itself presented as an independent claim and exhausted in state court). *See also Murray v. Carrier,* 477 U.S. 478, 488-89, 106 S.Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986). Petitioner has therefore defaulted this claim.

Petitioner cannot rely on PCRA counsel ineffectiveness to establish cause, as *Martinez v. Ryan*, ___ U.S. ___, ___, 132 S.Ct. 1309, 1318, 182 L.Ed.2d 272

(2012), allows that only on an underlying claim of trial-counsel ineffectiveness, not one of trial court error. *See Stroll v. Johnson*, C.A. No. 13-1675, 2013 WL 6074160, at *1 (3d Cir. 2013)(nonprecedential)(*Martinez* does not apply to a defaulted claim of judicial error concerning an improper jury instruction); *Gore v. Crews*, 720 F.3d 811, 816 (11th Cir. 2013)("By its own emphatic terms, the Supreme Court's decision in *Martinez* is limited to claims of ineffective assistance of trial counsel that are otherwise procedurally barred due to the ineffective assistance of post-conviction counsel")(refusing to apply *Martinez* to a claim that the petitioner was incompetent to be executed).

        Nor can Petitioner meet the prejudice prong of this exception. To demonstrate prejudice, Petitioner must show that the error "worked to his actual and substantial disadvantage, infecting the entire proceeding with error of constitutional dimensions." *Kaufman v. Cameron*, No. 09-CV-891, 2010 WL 2331419, at *3 (M.D. Pa. Jun. 7, 2010)(Caldwell, J.)(quoted case omitted). Petitioner was convicted of carrying a firearm without a license under 18 Pa. Cons. Stat. Ann. § 6106(a)(2). In relevant part, under that subsection, a person who lacks a license to carry a firearm can be convicted of carrying a firearm without a license in two ways: (1) by carrying a firearm in any vehicle; or (2) by carrying "a firearm concealed on or about his person . . . ." Petitioner cannot show prejudice here because he challenges the sufficiency of the evidence to convict him of concealing the firearm on his person and does not address the alternative way he could have been convicted.

Petitioner cannot rely on the fundamental-miscarriage-of-justice exception, the second way of excusing default. This exception is a claim of actual innocence, *see House v. Bell*, 547 U.S. 518, 537, 126 S.Ct. 2064, 2077, 165 L.Ed.2d 1 (2006), and Petitioner addresses only the sufficiency of the evidence to convict him of concealing the firearm on his person, not of carrying the firearm in a vehicle.

In any event, if we were to address the merits of the claim, we would reject it, again because Petitioner addresses only the sufficiency of the evidence to convict him of concealing the firearm on his person.

> F. *Ground Six: a Claim of Ineffective Assistance of Trial Counsel in Not Using the Victim's Medical Records, Petitioner's Medical Records, and a Psychological Report on Petitioner*

Petitioner claims that trial counsel was ineffective in failing to use certain records. First, counsel failed to use the victim's medical records to challenge whether the victim had suffered the serious bodily injury required to establish aggravated assault. As Petitioner argued above in connection with the medical stipulation, he contends the victim's medical records differ from the stipulation in not recording any nerve damage and would have undercut the victim's claim of protracted injury from the gunshot.

The state courts did not explicitly deal with this claim. (It is set forth in the appellate PCRA brief, Doc. 13-1, ECF pp. 160-62). We think it is intertwined with the claim that counsel was ineffective for agreeing to the stipulation. For the reasons given above in regard to that claim, we reject this one as well.

-15-

Second, counsel failed to use Petitioner's medical records from the night of the shooting to establish that the injuries he suffered that night would negate criminal intent on his part and establish the defense of mistake of fact. (Doc. 13-1, ECF p. 163).[6] Third, counsel failed to use the report prepared on Petitioner by psychologist Ned Delaney to negate the intent necessary to sustain the charges. (*Id.*, ECF p. 173).[7]

We deal with the second and third claims together. The trial court (and by adoption the superior court) rejected the Delaney claim because Petitioner's defense at trial, as noted above, was that the gun had gone off accidentally when he and the victim struggled for it after the victim accosted him. Intent was therefore irrelevant. (Doc. 13-1, ECF p. 75-76; Doc. 13-1, ECF p. 282). We agree with this reasoning, and it applies to the claim based on Petitioner's medical records as well.

> G. *Ground Seven: a Claim of Ineffective Assistance of Trial Counsel in Not Presenting an Affirmative Defense Even Though They Had a Plethora of Evidence, Including Medical Records and a Psychological Expert's Evaluation*

Petitioner claims trial counsel was ineffective in not presenting an affirmative defense even though they had a "plethora of evidence, including medical records and a psychological expert and evaluation . . . ." (Doc. 1, ECF p. 12).

---

[6] Petitioner's medical records from the night of the shooting are at Doc. 17-1, ECF pp. 122-125.

[7] The Delaney report is at Doc. 17-1, ECF pp. 127-131.

We reject this claim. It is repetitive of claims with which we have already dealt. Further, as already noted, counsel did put on an affirmative defense, when Petitioner testified the gun went off accidentally after the victim accosted him.

### H. *Ground Eight: a Claim of Ineffective Assistance of Trial Counsel in Not Calling Ned Delaney as an Expert Witness*

Petitioner claim trial counsel was ineffective in not calling Ned Delaney as an expert witness in support of an affirmative defense. We already rejected this claim above.

### I. *Ground Nine: a Claim of Ineffective Assistance of Trial Counsel for Failing to Call Character Witnesses*

Petitioner claims trial counsel was ineffective in failing to call character witnesses who could have testified to Petitioner's character for truthfulness and nonviolence.

The trial court rejected this claim because Petitioner had failed at the PCRA hearing to make the requisite showing under state law on a claim that counsel was ineffective in not calling a witness. Citing *Commonwealth v. Horton*, 434 Pa. Super. 478, 486, 644 A.2d 181, 185 (1994), the trial court stated Petitioner had to prove the following but failed to do so:

> 1) the witness existed, 2) the witness was available, 3) counsel was informed of the existence of the witness, 4) the witness was prepared to cooperate and testify for Defendant at trial and 5) the absence of the testimony prejudiced defendant so as to deny him a fair trial.

(Doc. 13-1, ECF p. 80).  This reasoning was adopted by the superior court.  (Doc. 13-1, ECF p. 282).  Our own review of the PCRA record (Doc. 13-1, ECF p. 56) indicates that the state courts' conclusion on this claim should not be disturbed for the reason Respondents advance, that Petitioner had not shown the witnesses existed and that they were available.  The analysis used and the ruling on the existence and availability of the witnesses is not an unreasonable application of federal law dealing with ineffective assistance of counsel, *see Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991); *Moore v. DiGuglielmo*, 489 F. App'x 618, 625-26 (3d Cir. 2012)(nonprecedential), although a ruling that rested solely on the witness's refusal to testify would raise some concerns.  *See Grant v. Lockett*, 709 F.3d 224, 239 n.10 (3d Cir. 2013).

IV.  *Conclusion*

We will issue an order denying the section 2254 petition.  The order will also deny a certificate of appealability, based on the analysis in this memorandum.  However, Petitioner is advised that he has the right for thirty (30) days to appeal our order denying his 2254 petition, *see* 28 U.S.C. § 2253(a); Fed. R. App. P. 4(a)(1)(A), and that our denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks a certificate of appealability from the court of appeals.  *See* Federal Rule of Appellate Procedure 22; Local Rule of Appellate Procedure 22.1.

/s/William W. Caldwell  
William W. Caldwell  
United States District Judge

February 17, 2016